Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510

*Attorney for Plaintiff, others listed below.*

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| Jason Crews, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 24-cv-00595-DWL |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| GoVine Insurance LLC | |
| and | |
| Jordan Zion | |
| Defendants. | |

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve

a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff Jason Crews brings this action under the TCPA, for contacting the Plaintiff and other individuals, who, like the Plaintiff, were listed on the National Do Not Call Registry.

4. Mr. Crews also alleges that Defendants used automated systems to make telemarketing calls from Florida and that by doing so Defendant has violated the provisions of the Florida Telephone Solicitations Act, FLA. STAT. § 501.059 ("FTSA").

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Jason Crews is an individual.

7. Defendant GoVine Insurance LLC is for-profit company that sells health insurance that is located in Fort Lauderdale, Florida.

8. Defendant Jordan Zion is a resident of Boward County, Florida, and was at all times relevant the owner and manager of GoVine who directed and authorized the illegal calls complained of herein.

**Jurisdiction & Venue**

9. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were and sent into this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

**TCPA Background**

11. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

12. Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15. Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

16. This regulation is presently codified at 47 CFR 64.1200(c)(1-2).

17. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

## FTSA Background

18. The Florida Telephone Solicitation Act ("FTSA"), FLA. STAT. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

19. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." FLA. STAT. § 501.059(8)(a).

5

20. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." FLA. STAT. § 501.059(1)(i).

21. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

**Factual Allegations**

22. Plaintiff Crews is a "person" as defined by 47 U.S.C. § 153(39).

23. Plaintiff's telephone number, 602-XXX-XXXX, is on the National Do Not Call Registry and has been registered continuously since 2006.

24. The Plaintiff's telephone number is used for residential purposes and is not associated with a business.

25. The Plaintiff's telephone number is assigned to a residential telephone exchange service for consumers, not a telephone exchange service for businesses.

26. The Plaintiff uses the telephone number for personal, family, and household purposes.

27. Mr. Crews nonetheless received at least seven telemarketing calls from the Defendants in the span of less than an hour on January 4, 2024 at 9:09 AM, 9:10 AM, 9:11 AM, 9:20 AM, 9:28 AM, 9:35 AM, and 9:51 AM from the caller IDs (602) 295-

6

1866, (850) 428-8942, (850) 428-8942, (602) 295-1111, (602) 903-4385, (954) 787-2473, and (409) 280-4677, respectively.

28. The calls all bore identical, or nearly identical, scripting from the illegally and fictitiously named "Marketplace Plans" and attempted to sell the Plaintiff health insurance.

29. Each call started with silence before a "bloop" sound and an agent joining the line. This sound is indicative of the ViciDial autodialer and is officially known as the "droplet" sound. It is played automatically as part of a macro when the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and a call center representative.

30. During each of these seven calls, after the "bloop" sound played, the Plaintiff was connected to an agent who was calling with an identical or nearly identical script.

31. The Plaintiff never asked for these calls.

32. The Plaintiff never did any business with the Defendants.

33. The Plaintiff played along with the call at 9:35 AM from the caller ID 954-787-2473 in an attempt to identify the identity of the caller who was calling him illegally and for no other reason. During that call, the Plaintiff was eventually transferred to an insurance agent of Defendant GoVine, Isaac Brito, who attempted to sell the Plaintiff health insurance.

34.     To complete the sales process, Mr. Brito sent the Plaintiff an email which affirmatively identified himself, Defendant GoVine, and Defendant Zion.

35.     The Plaintiff then attempted to contact GoVine to ascertain why he received such illegal calls, whether such calls were placed with consent, and the source of the calls, and to receive a copy of Defendant's do not call policy and to be placed on Defendant's do not call list.

36.     The Plaintiff received no response.

37.     Under the TCPA, an individual such as Zion may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

38.     Zion personally participated in the actions complained of by: (a) having his personal name on the documents which were sent to the Plaintiff in an effort to attempt to sell the Plaintiff health insurance, (b) personally authorizing the illegal calls, (c) personally directing the illegal calls, (d) personally directing and authorizing the scripting and selecting of calls to be made, and (e) selecting and orchestrating the calling strategy, including by choosing to use the ViciDial automatic dialer.

39.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

40. Plaintiff never provided his consent or requested the calls.

41. The calls were all unwanted, nonconsensual encounters.

42. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## Class Action Statement

43. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

44. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

45. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

National Do Not Call Registry Class: All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

FTSA Class: All persons within the United States, who, (1) received a telephonic sales call regarding Defendants' goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

46. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

47. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

48. Members of the Classes as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

49. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

50. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

51. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

52. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

53. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

    a. Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

    b. Whether Defendants' conduct constitutes a violation of the TCPA;

    c. Whether Defendants used automated equipment as defined by Florida law to send telemarketing calls;

    d. Whether Defendants are vicariously liable for any calls placed by telemarketing vendors, if any; and

    e. Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

54. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

55. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

56. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

57. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

# FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

61. Defendants' violations were negligent, willful, or knowing.

62. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

63. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

64. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

66. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed

to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

67. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

68. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

69. In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

70. Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

71. As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Injunctive relief prohibiting Defendants from calling telephone numbers advertising its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.     That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA pr FTSA and $1,500 for each knowing or willful violation; and

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.     Such other relief as the Court deems just and proper.

**JURY DEMAND**

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

| | |
|---|---|
| Dated: March 28, 2024 | Respectfully Submitted, |
| | */s/ Anthony Paronich* |
| | Anthony Paronich |
| | Email: anthony@paronichlaw.com |
| | PARONICH LAW, P.C. |
| | 350 Lincoln Street, Suite 2400 |
| | Hingham, MA 02043 |
| | Telephone: (508) 221-1510 |
| | *Subject to Pro Hac Vice* |